## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| **JOSE BUSANET,** | |
| *Petitioner,* | **Case No. 2:04-cv-00168-JDW** |
| v. | |
| **JOHN E. WETZEL, et al.,** | |
| *Respondents.* | |

### MEMORANDUM

If justice delayed is justice denied, then Jose Busanet has been cheated of his day in court. In 2016, Mr. Busanet filed a petition in state court challenging his criminal conviction. He waited year after year for a decision, but nothing came. Now, **eight years later**, Mr. Busanet has waited long enough. I will excuse Mr. Busanet from exhausting his claims in state court and allow him to reopen this *habeas* proceeding.

I.      **BACKGROUND**

A.      **Conviction**

On February 19, 1999, a jury convicted Mr. Busanet of first-degree murder, aggravated assault causing serious bodily injury, aggravated assault with a deadly weapon, two counts of reckless endangerment, possessing an instrument of crime, conspiracy to commit first-degree murder, conspiracy to commit aggravated assault, and

conspiracy to commit reckless endangerment. *See Com. v. Busanet*, 817 A.2d 1060, 1063 (2002). At the penalty phase, the jury returned a sentence of death. *See id.*

### B.    Post-Conviction Proceedings

Mr. Busanet's post-conviction proceedings are lengthy and complex. Here I recount only the procedural history necessary to resolve this Motion.

#### 1.    *Habeas* petition in federal court

On October 29, 2012, Mr. Busanet filed a Petition for Writ of *Habeas Corpus* in federal court. Discovery relevant to that Petition ensued. Judge Davis ordered some discovery. In May 2018, Judge Smith (who took over this case for Judge Davis after Judge Davis retired) stayed this case to allow Mr. Busanet to exhaust his claims in state court.

#### 2.    PCRA Petition in State Court

On November 16, 2016, Mr. Busanet filed a petition in the Berks County Court of Common Pleas seeking relief under Pennsylvania's Post Conviction Relief Act based on discovery from his proceeding in federal court. (*See* Dkt. No. CP-06-CR-0001386-1998 (Berks Cty.)) On July 18, 2018, Mr. Busanet filed an amended PCRA Petition. That Petition was ripe for review in May 2019. In June 2019, the original state court judge assigned to the matter recused himself, and the Berks County Court reassigned the case to a new judge.

On August 1, 2019, Mr. Busanet filed a Motion for Judgment on the Pleadings. The Commonwealth responded on December 13, 2019. On December 16, 2019, the PCRA

Court heard oral argument on the Motion. At oral argument, Mr. Busanet and the Commonwealth agreed that no evidentiary hearing was necessary and that the Motion was ripe for disposition. On January 24, 2020, the Commonwealth submitted a letter following up on issues that arose at the argument.

On October 22, 2020, Mr. Busanet filed with the PCRA Court a notice of supplemental authority in support of his claims. On February 9, 2021, the PCRA Court held a status conference. On February 22, 2021, Mr. Busanet filed a supplemental memorandum to address issues that arose at the status conference. The Commonwealth responded on March 4, 2021, and Mr. Busanet replied on March 15, 2021. On August 16, 2021, Mr. Busanet filed a supplemental notice of authority. The Commonwealth responded on August 31, 2021.

At a telephone status conference on March 3, 2022, the Judge in the PCRA Proceeding indicated that he had drafted his opinion in part, but it was not yet finished. On August 18, 2022, the Judge's staff confirmed in writing that the decision was still in progress. On February 1, 2023, Mr. Busanet filed another supplement, and the Commonwealth responded on February 8, 2023.

On September 14, 2023, Mr. Busanet filed a Motion for Decision, asking the PCRA Court to issue a decision within sixty days. On April 18, 2024, the Commonwealth filed a Motion for Status Conference and Decision with the PCRA Court. The PCRA Court has yet to rule on either.

### C.      Motion To Excuse Exhaustion

On December 8, 2023, Mr. Busanet filed this Motion. He seeks to lift the stay of these proceedings and excuse exhaustion of state remedies. The Commonwealth responded. On May 15, 2024, I held a hearing on the Motion. During the hearing, the Commonwealth acknowledged that it was in a "tough position" and advocating for a "hard sell." (ECF No. 80 at 5:24, 7:6.) When I asked how long would be too long for Mr. Busanet to wait, the Commonwealth declined to give a straightforward answer. (*Id.* at 10:17-25.) After the hearing, I took the Motion under advisement, and it is ripe for disposition.

Following the hearing, the Commonwealth asked the PCRA Court for an update on its decision. (*See* ECF No. 79.) The PCRA Court reported that it would issue a decision in 30-45 days. That time has passed, and the PCRA Court still has yet to issue an opinion.

## II.     LEGAL STANDARD

In general, a federal court may not entertain a petition for a writ of *habeas corpus* until the petitioner has first exhausted his remedies in state court.  *See* 28 U.S.C. § 2254(b). The basis for the exhaustion requirement is not jurisdictional. Rather, it's a matter of comity. *See Story v. Kindt*, 26 F.3d 402, 405 (3d Cir. 1994). A federal court "need not defer to the state judicial process when there is no appropriate remedy at the state level or when the state process would frustrate the use of an available remedy." *Lee v. Stickman*, 357 F.3d 338, 341 (3d Cir. 2004). A state court's "inexcusable or inordinate delay … in

4

processing claims for relief may render the state remedy effectively unavailable." *Id.* (quoting *Wojtczak v. Fulcomer*, 800 F.2d 353, 354 (3d Cir. 1986)).

Whether exhaustion should be excused requires a two-step process. First, the court determines if the petitioner has established the existence of either inordinate or inexcusable delay. *See Story*, 26 F.3d at 405. "Delay only rises to the level of inordinate in extreme cases*" Singleton v. Wynder*, 485 F. Supp. 2d 602, 605 (E.D. Pa. 2007). If there has been such delay, the burden shifts to the Commonwealth to "demonstrate why exhaustion should still be required—a burden that is difficult to meet." *See Story*, 26 F.3d at 405.

Delays lasting multiple years may qualify as inordinate or inexcusable. *See, e.g.*, *Coss v. Lackawanna County Dist. Att'y*, 204 F.3d 453, 460 (3d Cir. 2000) (*en banc*) (seven-year delay); *Lee*, 357 F.3d at 341 (eight-year delay); *Story*, 26 F.3d at 406 (nine-year delay); *Hankins v. Fulcomer*, 941 F.2d 246, 249 (3d Cir. 1991) (eleven-year delay). The shortest delay that the Third Circuit has found to be inordinate in a case in which it excused exhaustion appears to have been 33 months. *See Wojtczak*, 800 F.2d at 356; *Cristin v. Brennan*, 281 F.3d 404, 410 (3d Cir. 2002).

In addition to the amount of time elapsed, courts analyze to what extent the state court has made meaningful progress towards resolution. *See Cristin*, 281 F.3d at 411; *Carter v. Vaughn*, 62 F.3d 591, 594 (3d Cir. 1995); *but see Wojtczak*, 800 F.2d at 356 n.3 (excusing exhaustion even after the delay's cause had been remedied). Courts may also analyze whether the delay is attributable to the petitioner or the government. *See, e.g.*,

*Singleton*, 485 F. Supp. 2d at 606; *Parker v. Dematteis*, No. CV 18-612-LPS, 2021 WL 3709733, at *4 (D. Del. Aug. 20, 2021).

## III.    DISCUSSION

### A.    Inordinate Delay

Mr. Busanet filed his PCRA petition eight years ago. It then took him two years to amend his PCRA petition. That delay, though not all is fault, is attributable to him, not to the PCRA Court. So, for practical purposes, the clock on the PCRA Court's delay began to run on July 18, 2018. And today, more than 6 years later, the case still awaits a disposition. That is within the range of delays that other courts have found to be inordinate.

I also consider the progress in the state court proceedings to decide if the delay has been inordinate. The Court of Common Pleas has not yet ruled on the merits of Mr. Busanet's petition. Under those circumstances, there's no "real progress," even if there has been the occasional appearance of activity. *Lee*, 357 F.3d at 342. The lack of a ruling on Mr. Busanet's petition separates his case from those where federal courts enforced exhaustion to advance comity. *See, e.g., Cristin*, 281 F.3d at 411. Given the lack of progress, I conclude that the PCRA Court's delay has been inordinate. None of the Commonwealth's arguments explains away this delay.

*First*, I won't blame Mr. Busanet for his various supplemental filings before the PCRA Court, for at least two reasons. There's no indication that Mr. Busanet submitted any supplemental authority that reflected a change in the law. There is therefore no merit

to the Commonwealth's suggestion that these submissions slowed the case or required substantial additional work on the part of the PCRA Court. A petitioner filing supplemental materials in state court shouldn't have to worry that it will later undermine his ability to challenge the speed of that court's work. The facts in this case differ from a situation where a petitioner requests and receives multiple continuances in the state court proceeding only then to contest the length of the proceeding in federal court. *See, e.g.*, *Singleton*, 485 F. Supp.2d at 606. In addition, lawyers often send notices of supplemental authority to (gently) prod a judge to rule on a long-pending motion. There's nothing wrong with doing so, and it would be inequitable to hold that doing so, when the supplemental authority is relatively insignificant, excuses the state court from the need to rule in a reasonable amount of time.

*Second*, the assignment of a new judge in the PCRA proceedings does not justify the delay. That reassignment happened in June 2019. It's now been five years since that happened. I sympathize with the judge who had to familiarize himself with the record of a complicated case. But doing so doesn't excuse the need for progress.

*Third*, the Covid-19 pandemic does not provide an excuse. The operative petition in this case predates the pandemic by almost two years. And, while the pandemic might have impacted courts, it also freed judges to work on opinions because they weren't able to do nearly as much in court. It's possible, of course, that a party could draw a link between the pandemic and a delay in processing case. *See, e.g.*, *Scheer v. Harper*, No.

2:21-CV-01571, 2022 WL 1541790, at *1 (W.D. Pa. Apr. 8, 2022). But the occurrence of the pandemic does not do so as a *per se* matter. And, of course, the PCRA Court noted twice in 2022 that it was working on the opinion, but no opinion has come.

For those reasons, the delay in state court qualifies as inordinate or inexcusable.

### B.    Excusing Exhaustion

Because Mr. Busanet has shown that there's been an inordinate delay, the Commonwealth has the heavy burden of explaining why exhaustion should still be required. It hasn't done so. During the hearing, the Commonwealth argued that if the PCRA Court grants Mr. Busanet relief, it would moot the proceedings in federal court. But that rationale relies on too many contingencies. It first assumes that the PRCA Court's decision is imminent. That optimism hardly seems warranted in the context of this case's procedural history. It's also conditioned on an outcome in Mr. Busanet's favor, which is not guaranteed.

Even assuming a decision is imminent, my analysis remains unchanged. Once the Court of Common Pleas rules on his Motion, Mr. Busanet is not yet done in state court. He will have to appeal to the Superior Court and await a decision there or else procedurally default his claims. *See Cristin*, 281 F.3d at 411. So, even if the Court of Common Pleas rendered its decision today, Mr. Busanet would endure yet another lengthy wait, a delay that bolsters the case for excusing exhaustion. *See, e.g., Story*, 26

F.3d at 406; *Sullivan v. Kuffman*, No. CV 15-5937, 2016 WL 2735669, at *3 (E.D. Pa. May 10, 2016).

The Commonwealth appeals to the principle of comity, but that concept only goes so far. The exhaustion requirement "encourages state prisoners to seek full relief first from the state courts, thus giving those courts the first opportunity to review all claims of constitutional error." *See Cristin*, 281 F.3d at 410 (alterations and internal quotation omitted). When that state court has been given "ample opportunity" to review those claims and fails to do so, "the principle of comity weighs less heavily." *Hankins*, 941 F.2d at 250. In such cases, a court bowing to comity risks denying "fundamental rights guaranteed to all defendants." *See id.* at 252. After this lengthy delay, Mr. Busanet is entitled to clarity on his request for post-trial relief.

## IV.   CONCLUSION

"To delay Justice is Injustice."[1] Mr. Busanet has endured an eight-year wait. I won't force him to wait longer when the end isn't even in sight. I will excuse the exhaustion requirement, lift the stay on Mr. Busanet's federal *habeas* proceeding, and set a schedule in this matter. An appropriate Order follows.

**BY THE COURT:**

*/s/ Joshua D. Wolson*
JOSHUA D. WOLSON, J.

August 12, 2024

---

[1] William Penn, *Some Fruits of Solitude* (1693).